UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION

RONALD MURDOCH,

                                 CASE NO.:  2:15-cv-14309-RLR

         Plaintiff,

v.

SCHOOL DISTRICT OF ST. LUCIE COUNTY,
FLORIDA; DEBBIE HAWLEY, individually and
in her official capacity as Chairman of the School
Board of St. Lucie County; DONNA MILLS,
individually and in her official capacity as Vice
Chairman of the School Board of St. Lucie County;
KATHRYN HENSLEY, individually and in her
official capacity as Member of the School Board of
St. Lucie County; CAROL A. HILSON,
individually and in her official capacity as Member
of the School Board of St. Lucie County; TROY
INGERSOLL, individually and in his official
capacity as Member of the School Board of St.
Lucie County; and GENELLE Z. YOST,
individually and in her official capacity as
Superintendent of the School Board of St. Lucie
County;    UCOLA    BARRETT-BAXTER,
individually and in her official capacity,

         Defendants.

_____/

## PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

    COMES NOW Plaintiff, RONALD MURDOCH, by and through his undersigned counsel, and hereby files this, his Complaint and Demand for Jury Trial, against Defendant, SCHOOL DISTRICT OF ST. LUCIE COUNTY, FLORIDA (hereinafter "SCHOOL DISTRICT"); Defendants, DEBBIE HAWLEY, DONNA MILLS, KATHRYN HENSLEY, CAROL A. HILSON, TROY INGERSOLL, GENELLE Z. YOST, individually and in their official capacities as members and superintendent, respectively, of the School Board of St. Lucie County, and UCOLA BARRETT-BAXTER, individually and in her official capacity, and in support thereof states:

## JURISDICTION

    1.    This is action is brought pursuant to 42 U.S.C. §1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; and 42 U.S.C. § 1988 for violations of Plaintiff's constitutional rights under the

First Amendment right of free speech, right to assemble, U.S. CONST. amend. I; 14th Amendment right to procedural due process U.S. CONST. amend. XIV; Florida Constitutional right to work, FLA. CONST. Art. 1, § 6; and tortious interference with and breach of his contractual rights.

2.      This Court has federal question jurisdiction over Plaintiff's section 1983, First and Fourteenth Amendment claims insofar as this matter involves violations of 42 U.S.C. § 1983 and Plaintiff's rights under the United States Constitution, as well as the Florida Constitution.

3.      This Court has supplemental jurisdiction over Plaintiff's state law constitutional claims under 28 U.S.C. § 1376 because the facts of these claims are so intertwined or related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Plaintiff is a former employee of Defendant, SCHOOL DISTRICT, and currently resides in Osceola County, Florida.

5.      Plaintiff is a citizen of the United States who is subject to the protections of 42 U.S.C. §§ 1981, 1983, and 1985.

6.      Defendant SCHOOL DISTRICT ("hereinafter SCHOOL DISTRICT") is organized and existing under the laws of the State of Florida and conducts business in St. Lucie County, Florida.

7.      SCHOOL DISTRICT is an "employer" within the meaning of 42 U.S.C. § 1983.

8.      Defendants DEBBIE HAWLEY, DONNA MILLS, KATHRYN HENSLEY, CAROL A. HILSON, TROY INGERSOLL, GENELLE Z. YOST, and UCOLA BARRETT-BAXTER are residents of St. Lucie County, Florida and at all times material hereto acted individually and in their official capacities with the School Board of St. Lucie County.

## VENUE

9.      SCHOOL DISTRICT has a principal place of business located at 4204 Okeechobee Road, Fort Pierce, St. Lucie County, FL 34947.

10.      Venue is proper in the Fort Pierce Division of the Southern District of Florida insofar as the incidents occurred in St. Lucie County, Florida and that Defendants at all times material hereto operated in Ft. Pierce, Florida, which is within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS[1]

11.      Plaintiff is a well-educated teacher in the subject area of math.

---

[1] For the most part, these factual allegations are taken from the Public Employees Relations Commission (PERC) Hearing Officer's Recommended Order dated September 26, 2014 which is attached hereto as Plaintiff's Exhibit A. The Hearing Officer's Recommended Order was adopted by Order on Merits of Unfair Labor Practice Charge on February 23, 2015, and the [Final] Order on Merits was not appealed.

12.     Plaintiff was hired as a teacher for SCHOOL DISTRICT for the school year 2012/2013.

13.     Plaintiff's employment contract with SCHOOL DISTRICT was effective from October 3, 2012 through October 2, 2013.  [Ex. E, Probationary Contract]

14.     Pursuant to the SCHOOL DISTRICT's policy set forth in its Employee Handbook, "Upon successful completion of probationary period, instructional staff will be issued an employment contract," implying that "successful", meaning good performance and teaching skills, a probationary employee shall be issued a [permanent] employment contract, thus creating an explicit and implicit contract for being hired permanently upon completion of the year's probationary period with good performance, conduct, and teaching skills.  Such explicit and implicit guarantees of employment create a property interest in employment.

15.     On or about October 3, 2012, Plaintiff began working in the Math Department at the Fort Pierce Westwood High School (Westwood), a school located within the subject SCHOOL DISTRICT.  During his employment, Plaintiff was selected to teach as part of Westwood's Homebound/Hospital Program.

16.     At all times material hereto, Plaintiff was a member of the St. Lucie Classroom Teachers Association and Classified Unit, Local 3616 (Union), which is the collective bargaining unit of the SCHOOL DISTRICT's non-administrative instructional personnel.

17.     Although Plaintiff was a member of the Union, he was neither an officer nor a representative, and he did not serve on any Union committees.

18.     During the 2012-2013 school year, Plaintiff's teaching skills were observed, and he was not criticized, placed on any corrective development plan, or informed of any teaching deficiencies as a result of the observations.

19.     After the 2013 Spring Break, the interim principal at Westwood was Ucola BARRETT-BAXTER, who was also an elementary school principal.

20.     At the end of school year 2012-2013, BARRETT-BAXTER oversaw the reappointment process and relied upon the recommendations of assistant principals.

21.     The assistant principals expressed concerns about Plaintiff's data, which indicated his students' scores were lower than the students' scores of other teachers.

22.     Plaintiff received a 2.0 on his 2012/2013 evaluation, meaning he was at a developing status, or needed improvement; however, it was recognized that he had not begun the school year at the beginning has had other teachers.

23.     At no time was Plaintiff's work performance ever called into question, and he was never written up for any deficiency in performance.

3

24.     Despite Plaintiff's score on his 2012/2013 evaluation, BARRETT-BAXTER re-appointed Plaintiff as an Algebra teacher for the coming 2013-2014 school year, even though she could have non-renewed his contract at that time.

25.     During the summer break during 2013, BARRETT-BAXTER received her first appointment as a high school principal at Westwood.

26.     Plaintiff volunteered to take part in 2013 summer activities, including Algebra Boot Camp; and he was hired for the position conditioned upon there being a sufficient number of students enrolled in the program.

27.     However, an insufficient number of students enrolled and, therefore, allegedly Plaintiff's "services were not needed" were not needed for the Algebra Boot Camp.

28.     At the request of Westwood assistant principal Jim Sloan, Plaintiff attended a pre-school planning meeting preceding the 2013-2014 school year.

29.     At the aforementioned pre-school planning meeting, BARRETT-BAXTER introduced herself as the new principal and stated that those in attendance were there because they were the "movers and shakers" in their respective departments thereby implying that Plaintiff was a "mover and shaker" in a positive context.

30.     During the pre-school planning meeting, BARRETT-BAXTER mentioned to Plaintiff and the other teachers sitting at the same table that she was going to do away with faculty meetings and, instead, was instituting twice-weekly collaborative planning meetings to improve student learning.

31.     Thereafter, a discussion ensued about the timing of the collaborative planning meetings, and Plaintiff commented to BARRETT-BAXTER that it would be difficult to find time to assemble all the teachers together to do collaborative planning whether it was a Tuesday morning or a Thursday night.  BARRETT-BAXTER listened to Plaintiff's comments and walked to the next table.

32.     In addition to scheduling concerns, Plaintiff was concerned because the addition of another meeting during the same week violated the teachers' Union contract.

33.     As a result of his concerns about meetings violating the Union contract, on or about August 23, 2013 Plaintiff contacted Vicki Rodriguez, Union vice-president, and informed her of BARRETT-BAXTER's intended implementation of weekly collaborative planning meetings to be scheduled on Tuesdays and Thursdays.

34.     On or about August 23, 2013, based upon the information received from Plaintiff regarding the planned meetings, Rodriguez sent e-mails to BARRETT-BAXTER and John Lynch, assistant superintendent, in order to obtain clarification regarding BARRETT-BAXTER's intentions.

35.     Plaintiff, along with other teachers, expected to be paid for attending the initial pre-school planning meeting; however, when they had not been paid, Plaintiff contacted BARRETT-BAXTER's executive secretary, Dura Loving, on or about August 24, 2013 to inquire as to the status of payment for himself as well as the other teachers.

36.     When Loving did not respond to the inquiry, Plaintiff sent a second e-mail on or about August 27, 2013 requesting the status of payment for attending the conference.

37.     Loving apologized and stated that she had forgotten Plaintiff's request.

38.     The first BARRETT-BAXTER collaborative planning meeting was conducted by on August 27, 2013.

39.     On or about August 28, 2013, Rodriguez called Lynch because BARRETT-BAXTER still had not responded, and another [collaborative] meeting was scheduled for the next day – August 29, 2013.

40.     During Rodriguez's telephone conversation with Lynch, Rodriguez informed Lynch that she was investigating the scheduling of the collaborative planning meetings on Plaintiff's behalf.

41.     About thirty minutes after Rodriguez's telephone conversation with Lynch on August 28, 2013, BARRETT-BAXTER sent an e-mail to the faculty regarding the collaborative meeting scheduled for the next day – August 29, 2013 – which stated, in pertinent part:

> "These planning meetings were intended to replace faculty meetings in order to enhance our instruction at Westwood.  I cannot make anyone take advantage of the opportunity, but I will hold you accountable for the quality of your instruction and the progress of your students, including the creation, administration and use of common assessment data.  If you choose not to attend the Thursday planning days, please know that you must report to work at 6:40 on Thursday mornings and that you are required to gather and implement the plan that is developed within your department."

42.     This e-mail implied that Lynch contacted BARRETT-BAXTER and informed him of his conversation with Union vice-president Rodriguez; therefore, BARRETT-BAXTER knew that the investigation on Plaintiff's behalf related to Union-related activities and Union contract violations.

43.     With respect to the BARRETT-BAXTER e-mail referenced in paragraph 41 above, even though the second meeting violated the Union contract and BARRETT-BAXTER had been so informed, she was still calling the meeting; holding teachers responsible for the content of the meeting; and requiring that teachers comply with her directive.

44.     In the interim, Plaintiff and two other math teachers decided to reinstate their self-initiated Friday lunchtime planning meetings that had originated during their lunch hours for planning during the prior school year.

45.     During the lunchtime planning meetings between the math teachers, they discussed topics such as a common assessment for the next project and how to approach the next subject.

46.     For the lunchtime teachers' planning meeting set for August 30, 2013, Plaintiff e-mailed to the "stakeholders", *i.e.*, the other math teachers and administrators, including BARRETT-BAXTER, an agenda and minutes of the meeting with a work product attached; and the documents were posted on the teachers' web page as well.

47.     All of the administrators, including BARRETT-BAXTER, received a copy of Plaintiff's e-mails regarding the teachers' planning meeting.

48.     As a result of Plaintiff's e-mail, BARRETT-BAXTER requested assistant principal Samantha Piscopo to investigate Plaintiff's lunchtime meetings.

49.     On or about September 4, 2013, assistant principal Piscopo visited Plaintiff's classroom to perform an informal pre-observation at BARRETT-BAXTER's request.

50.     On or about September 5, 2013, Piscopo sent an e-mail to Plaintiff scheduling a meeting with principal BARRETT-BAXTER; assistant principal Presley Charles; Piscopo; and Plaintiff regarding the lunchtime planning meetings.

51.     Plaintiff told colleagues of the meeting, and his colleagues suggested that a Union representative accompany him to the meeting.

52.     Employees who are subject to an investigatory interview and reasonable belief that the investigation will result in disciplinary action have the right to Union representation during such interviews.

53.     Therefore, Plaintiff requested Union representation at the meeting and attended the September 5, 2013 meeting accompanied by Vanessa Tillman, then Union president.

54.     Because Plaintiff attended the meeting with a Union representative, BARRETT-BAXTER was further aware of Plaintiff's Union activities; was aware that her actions violated the Union contract; and was incensed at Plaintiff for seeking Union representation and involvement.    Moreover, BARRETT-BAXTER's racial animus toward Plaintiff was instrumental in her actions toward Plaintiff.   Thereafter, BARRETT-BAXTER stepped up her vindictive actions toward Plaintiff.

55.     During the September 5, 2013 meeting of Plaintiff with Piscopo, Charles, and Tillman, Plaintiff was asked questions about the lunchtime meetings, such as what they were doing on Fridays during lunch and who was with him.  Plaintiff responded that the meetings

were organized by the math department teachers; the meetings were voluntary; and at the lunchtime meetings the teachers discussed teaching strategies and concepts for improving students' performance.

56.     At no time was Plaintiff requested by any school official to stop the lunchtime teachers' meetings.

57.     Following the September 5, 2013 meeting with Piscopo, Plaintiff forwarded an e-mail summarizing his view of the meeting to Piscopo and BARRETT-BAXTER. The e-mail stated in pertinent part:

> "I noted with great regret AP Piscopo's comment that she had not read our minutes but only the agendas to date.  Minutes are intended to clearly convey the gist of the meeting:  the talking points, an outline of the work accomplished, etc. I would gently offer that had she done so, her concerns may have been somewhat satisfied as to the work we are accomplishing here – on our own time.
>
> Ms. Tillman shared the Weingarten Rights concerning employee rights when summoned to meetings. She further suggested a less formal setting would have solicited less defensive responses.   (And I am, coincidentally, in total agreement with Ms. Tillman's point.)
>
> I acknowledge with pleasure both assistant principal's willingness to attend a future meeting(s) as their schedules allow; and are [sic] pleased to continue to invite both to attend."  [Plaintiff's e-mail].

58.     On September 9, 2013, all high school teachers, among other recipients, received an e-mail providing them with hyperlinks to AIMSweb webinars, which are on-line training webinars for math teachers.

59.     After receiving this e-mail, Plaintiff requested of assistant principal Charles as to the time the teachers were supposed to take the one-hour training; Charles indicated he would check for a response to the question but never responded to Plaintiff.

60.     During a Tuesday morning collaborative planning math meeting, Plaintiff suggested to Piscopo that the AIMSweb training could occur during the following Tuesday's collaborative planning math meeting.

61.     By September 13, 2013, Plaintiff still had not received payment for the initial meeting about which he inquired, and he followed up with Loving by a third e-mail.  In response to Plaintiff's request, on September 13, 2013, BARRETT-BAXTER sent an e-mail to Plaintiff stating that, "The stipend was submitted after the start of the school because of the roll in the Title I budget.  You won't receive a definite date, but we can certainly get an estimation [sic] on when everyone will receive if.  If anyone else has any questions, please let them know they may come and see me directly…."

62.     Also on September 13, 2013, Piscopo sent an e-mail to Plaintiff regarding the results of her informal evaluation of September 4, 2013 in which she stated:

> "Upon arriving to [sic] your class I noticed that your students were all engaged in taking an assessment.  It was clear that you have routine procedures in place with regards to testing situations.  Your students were quiet and working on their task [sic].  You had a learning goal and target written on your board that was visible for all students.  Please remember that the learning goal and target wording must come directly from the scale.
>
> We will continue to come in classrooms for the remainder of September to continue this process.  Please let me know if there are any specific elements that you are working on and would like for me to assist you with."

63.     Plaintiff learned of an "e2020" program, which is an afterschool credit retrieval program for students, and he requested that Dura Loving put his name in the hat.

64.     On September 17, 2013, BARRETT-BAXTER sent an e-mail to various recipients, including Plaintiff, informing them that they had been selected to work after school in the credit retrieval lab Monday through Thursday.

65.     Plaintiff responded affirmatively on the same day to the effect that he was "honored to be selected" and asked various questions about the program including how much he was to be compensated.

66.     BARRETT-BAXTER thanked Plaintiff for his speedy response and informed him that after she had spoken with guidance they were going to focus on English, as opposed to his area of expertise – math.  Plaintiff responded that if he was not needed it was fine and asked that his name be removed from the future list.

67.     During these events, BARRETT-BAXTER arrived at the point that she wanted to consider other options for Plaintiff; she contacted the SCHOOL DISTRICT's Human Resources in that regard, learned that Plaintiff was still in probationary status, and that there was a window within which she could terminate probationary employees' contracts.

68.     On September 18, 2013, the school's instructional coach, Richard Keller, sent an e-mail to various recipients, including Plaintiff, whereby he announced Part 1 of the AIMSweb training session to be conducted on September 20, 2013 at 6:40 a.m.  Keller's e-mail also stated that teachers would not receive compensatory time because the training was being conducted during normal business hours.

69.     On September 19, 2013, BARRETT-BAXTER sent an e-mail to recipients, including Plaintiff, about the AIMSweb training scheduled for the next day.  Immediately after receiving the BARRETT-BAXTER e-mail, Plaintiff received a second e-mail from BARRETT-BAXTER stating, "Please meet me tomorrow morning [September 20, 2013] at 6:30 in my office."

70.     Following these e-mail notifications concerning the AIMSweb training scheduled for September 20, 2013, Union president Tillman received a call from a member of the Union who stated that the AIMSweb training meeting had been called "at the last minute".  As a result, Tillman contacted BARRETT-BAXTER by telephone and informed her that the last-minute e-mail constituted a Union contract violation because the contract required at least 24 hours' notice of a meeting.

71.     During the course of the Tillman/BARRETT-BAXTER conversation, BARRETT-BAXTER stated unsolicited by Tillman, "Well, I guess Mr. Murdoch will be happy." This statement by BARRETT-BAXTER was made vindictively because she assumed that Plaintiff had reported the violation of the meeting called by her – the meeting of which she was informed violated the teachers' Union contract - because she believed Plaintiff resisted her authority; and her racial animus toward Plaintiff.

72.     Further, the PERC Hearing Officer found BARRETT-BAXTER was motivated by Murdoch's concerted protected and Union activities in terminating his contract given the timing of BARRETT-BAXTER's statement in relation to her terminating Murdoch's contract of employment; the context in which the statement was made. *i.e.,* to the Union president who was investigating BARRETT-BAXTER's actions; and that BARRETT-BAXTER spontaneously raised Murdoch's name.  [Exhibit A, pp. 20-21].

73.     Plaintiff's termination of employment with the SCHOOL DISTRICT was effective September 20, 2013 just days before he was to become a full-time permanent employee and without hearing.

74.     PERC's Hearing Officer found that Plaintiff proved that his protected activity was a substantial or motivating factor in BARRETT-BAXTER's decision to terminate his annual contract. [Exhibit A, p. 22].

75.     Furthermore, the Hearing Officer found that but for Plaintiff's concerted protected activities, Plaintiff's contract of employment would not have been terminated.  [Exhibit A, pp. 22-23].

76.     Based on Plaintiff's Union activities and involvement, based on BARRETT-BAXTER's malice toward Plaintiff because of those activities, and based on BARRETT-BAXTER's racial animus toward Plaintiff, BARRETT-BAXTER vindictively and with malice informed Plaintiff on September 20, 2013 that he was a probationary employee, that his services were no longer required, and terminated his employment.  Plaintiff was immediately escorted from the building as though he had committed some crime.  No other reason for his termination of employment was provided.

77.     Termination from employment in this manner thus appeared to future employers that there was a problem with his teaching abilities and that Plaintiff's teaching skills and abilities were undesirable or some other problem that future employers did not wish to acquire and made it very difficult for Plaintiff to obtain further employment.

78.     Therefore, termination of Plaintiff's employment in this illegal, discriminatory, and malicious manner was a blight on Plaintiff's reputation in the community and on his professional reputation as a teacher.

79.     BARRETT-BAXTER made the discriminatory decision to terminate Plaintiff's employment with the SCHOOL BOARD, and this discriminatory decision was rubber-stamped by Defendants DEBBIE HAWLEY, DONNA MILLS, KATHRYN HENSLEY, CAROL A. HILSON, TROY INGERSOLL, and GENELLE Z. YOST at the regular meeting of the School Board which occurred on October 8, 2013. [Exhibit B, E-Agenda, the School Board of St. Lucie County, Regular Meeting, Oct. 8, 2013].

80.     Union President Vanessa Tillman attended the October 8, 2013 School Board meeting and requested the Board "to research the recommendation to terminate a probationary math teacher (contained in consent agenda item #11)". [Exhibit B, p. 3].

81.     The attachment to the School Board E-Agenda [Exhibit B] contained a list of teachers who were to be retained; the list also contained the teacher to be terminated under the heading "Terminations-Probationary Period". The only teacher whose contract was to be terminated was Plaintiff – Ronald Murdoch. [Exhibit B, attachment, p. 3].

82.     This termination was glaringly obvious that Plaintiff was the only teacher among all those listed in the attachment whose employment was to be terminated; was embarrassing and humiliating to Plaintiff; tainted his reputation in the community; and put a blight on his professional career as a teacher.

83.     Without heeding the request of Union President Tillman to research or investigate the termination of Plaintiff's employment the School Board members, acting in their official capacities and in their individual capacities, rubber-stamped the unlawful termination of Plaintiff's employment.

84.     Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST, and BARRETT-BAXTER were motivated by discriminatory animus based on Plaintiff's Union activities and racial bias; knew the reason Plaintiff's employment was being terminated was based upon his Union activities and racial bias; did not further investigate the reasons for termination of Plaintiff's contract; and failed and refused to further research the reasons for termination of Plaintiff's contract, thus demonstrating bad faith on their part individually and as official School Board members and teacher/principal.

85.     Plaintiff began searching for a job with other School Districts; however, due to his being terminated only days before his year-long probationary status was due to expire, the termination of his contract and employment left an implication and stigma on his employment history that he was terminated for cause or that his employment with Defendant had been unsatisfactory in his teaching or that he was not a good performer/teacher.

86.     Plaintiff began searching for another teaching position immediately, but because of the stigma associated with his termination of employment by Defendant, he was unsuccessful in obtaining other employment until January of 2014.

87.     During the period of time from September 20, 2013 to January 10, 2014 when his subsequent employment began, Plaintiff was without income and was emotionally, physically, and mentally humiliated, embarrassed, and stressed and, furthermore, was financially stressed as to how to meet his living expenses.

88.     As a result of obtaining employment in another County, Plaintiff was required to obtain a second residence but was unable to terminate the lease at his residence in St. Lucie County.  Therefore, until his lease in St. Lucie County expired, Plaintiff was liable for paying two lease payments on residences.  This had a great economic impact on a budget where income was virtually non-existent due to Plaintiff's unlawful firing.

89.     Plaintiff was required to retain an attorney to represent him before PERC to challenge the termination by Defendant; and this action created additional stress and strain on Defendant emotionally, physically, mentally, and financially.

90.     After hearing on July 23, 2014 and the parties' filing exceptions, PERC issued its Hearing Officer's Order on September 26, 2014 and cited Findings of Fact as incorporated herein above.

91.     In addition to PERC's Findings of Fact, the Hearing Officer found that BARRETT-BAXTER was motivated by Plaintiff's concerted protected and Union activities in terminating his contract.  [Exhibit B, pp. 20-21].

92.     The Hearing Officer found that BARRETT-BAXTER's testimony that Plaintiff's contract of employment was based on his [poor] teaching performance during the 2012-2013 school year was discredited as pretext  [Exhibit A, Order, p. 21] based on his concerted protected and Union activities.

93.     The Hearing Officer found that Plaintiff demonstrated by a preponderance of the evidence that Plaintiff was engaged in concerted protected activity which was a substantial or motivating factor in BARRETT-BAXTER's decision to terminate his contract.  [Exhibit A, Order, p. 22].

## PERC'S CONCLUSIONS OF LAW

94.     PERC concluded that the School District is a public employer within the meaning of Section 447.203(2), Florida Statutes and that at all times pertinent to the unfair labor practice charge, Plaintiff was a public employee as defined by Section 447.203(3), Florida Statutes. [Exhibit A, p. 24].

95.     PERC found that the School District terminated Plaintiff's contract in violation of Section 447.501(1)(a) and (b), Florida Statutes, because he engaged in concerted protected Union activity.  [Exhibit A, p. 24].

96.     PERC found that the School District knew or should have known that its conduct was a violation of Chapter 447, Part II, Florida Statutes. [Exhibit A, p. 24].

97.     On February 23, 2015, PERC issued a non-final Order adopting the Hearing Officer's Factual Findings as modified and agreeing with the Hearing Officer's analysis of the dispositive legal issues, conclusions of law, and recommendations and sustaining Plaintiff's Charge.

98.     PERC ordered, *inter alia,* Plaintiff's reinstatement to his employment with Defendant with back pay with interest, attorneys' fees, and costs. *Id.* at 18-19.

99.     As of the filing of this Complaint, the SCHOOL DISTRICT has not complied with the Order to reinstate Plaintiff, and he has not been re-instated.

100.    As an administrative agency, PERC is without authority to award either compensatory damages for mental anguish and emotional distress, humiliation, or punitive damages, all of which are available to a prevailing plaintiff under sections 1981, 1983, and 1985. Therefore, Plaintiff seeks additional damages to which he is entitled as a result of Defendant's violation of his constitutionally-protected rights.

101.    The Defendants' unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, malicious, and negligent course of conduct taken in bad faith concerning Plaintiff's employment with the SCHOOL DISTRICT complained of herein constitutes unconstitutional and retaliatory abuse of actual and apparent authority of Defendants SCHOOL DISTRICT, HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, and YOST, individually and in their official capacities, under color and pretense of law and under color of governmental authority, to wit:  under color of statutes, ordinances, regulations, customs, usages and policies of the United States, the State of Florida, and the School District of St. Lucie County, Florida implemented and undertaken by Defendants to injure Plaintiff, to interfere with and terminate Plaintiff's employment contract; to punish and chill Plaintiff's First Amendment rights of freedom of speech, right to assemble, right to associate, right to participate in Union activity, and right to work; to deprive Plaintiff of property without due process; to deprive Plaintiff of substantive due process; to deprive Plaintiff of the equal protection of the laws and otherwise to deprive Plaintiff of his rights, privileges and immunities as secured to him by the Constitution and laws of the United State of America, by the Constitution and laws of the State of Florida, and of the contract between the SCHOOL DISTRICT and St. Lucie Classroom Teachers Association/Classified Unit (hereinafter "Contract"),  in violation of the laws of the United States of America, by the Constitution and laws of the State of Florida, by the Policies of the SCHOOL DISTRICT, and by the Contract.

102.    The Defendants' unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, malicious, and negligent course of conduct taken in bad faith concerning

termination of Plaintiff's employment herein complaint of unlawfully, knowingly, and purposefully penalized, abridged, infringed, impaired, inhibited, harmed, denied, nullified, and chilled the following protected rights, privileges, and immunities of the Plaintiff as secured by the Constitution and laws of the United States, by the Constitution and laws of the State of Florida, by the Policies lawfully enacted by the SCHOOL DISTRICT, and the Contract, to wit: Plaintiff's property and contract rights in employment; to punish and chill Plaintiff's First Amendment rights of freedom of speech, right to assemble, and right to participate in Union activity; to deprive Plaintiff of property without due process; to deprive Plaintiff of substantive due process; and to deprive Plaintiff of the equal protection of the laws and to otherwise deprive Plaintiff of his rights, privileges, and immunities as secured to him by the Constitution and laws of the United States of America, by the Constitution and laws of the State of Florida, by the Policies lawfully enacted by the SCHOOL DISTRICT, and by the Contract.

103.    Defendants' unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, malicious, and negligent course of conduct concerning Plaintiff's employment violated Plaintiff's rights protected by the First, Fifth, and Fourteenth Amendments to the United States Constitution, establishing Plaintiff's entitlement to damages under 42 U.S.C. §§ 1981, 1983, 1985 and attorney's fees under § 1988 and constituting unconstitutional action of Defendants SCHOOL DISTRICT, HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST, and UCOLA BARRETT-BAXTER, acting individually and under color of law and pretense of law as such course of conduct was retaliatory, discriminatory, selective, punitive, made with animus, made in bad faith, impermissible, invalid, unauthorized by law, lacking any legal basis, irrational, and not rationally related to furtherance of any legitimate governmental interest, arbitrary, capricious, contrary to ordered liberty, shocking, violative of universal standards of decency, egregious, unacceptable, outrageous, and interposed for the knowingly, wrongful, and unlawful purposes of oppression, punishment, and retaliation, constituting an abuse of governmental power and, as such, was not authorized by law or legally justified, and constituted legal malice toward Plaintiff.

104.    Defendants knew or reasonably should have known that Plaintiff, as an individual citizen, possessed constitutionally-protected rights to be free from retaliatory treatment or the termination of his employment contract, even if Plaintiff vigorously exercised his right to free speech, right to assemble, and right to participate in Union activity.  It was not objectively reasonable for Defendants to believe that Defendants' unconstitutional, wrongfully, tortious, and negligent course of conduct made in bath faith toward Plaintiff in termination of his conduct was legally permissible in light of constitutional rights, legal rules, contract of employment, and Contract (with the Union) in existence at the time of the conduct.  Nor was it objectively reasonable for Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST, and BARRETT-BAXTER to believe that their actions were permissible under law.

105.    Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST, and BARRETT-BAXTER are not entitled to immunity or qualified immunity regarding the unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, malicious, and negligent course of conduct taken in bath faith and with malice toward Plaintiff as complained of herein while acting under color of law, because their actions were clearly prohibited by federal and state law at the time of their conduct; was clearly prohibited by reference to common standards of

fairness, fair play and due process; and was objectively and legally unreasonable in light of the legal rules clearly established at the time of the conduct.

106.    Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST, and BARRETT-BAXTER stand personally liable to Plaintiff pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 based upon their conspiracy to punish Plaintiff, and Defendants' direct involvement and participation in the unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory course of conduct concerning Plaintiff complained of herein and based upon racial animus while acting in their official capacities with the SCHOOL DISTRICT and under color of law and under pretense of law.

107.    With respect to the matters complained of herein, the SCHOOL DISTRICT stands jointly and severally liable to Plaintiff because said Defendant acted under color of law and under pretense of law, and Defendant SCHOOL DISTRICT ratified, approved, implemented, participated in, and authorized the unconstitutional, wrongful, tortious, and negligent course of conduct in bath faith concerning Plaintiff as complained of herein, as committed by Defendant SCHOOL DISTRICT and by its agents, members of the School Board, School District Superintendent in their highest policy-making official capacities, thereby constituting the acts, official policy, and final decisions of Defendant SCHOOL DISTRICT.

108.    The public interest has been harmed by Defendants' unlawful actions against Plaintiff.

109.    As the direct, proximate, intended, and foreseeable result of Defendants' unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, and negligent actions taken in bad faith and with malice toward Plaintiff, Plaintiff has suffered, and into the indefinite future, shall continue to suffer grave and substantial damages and injuries, including without limitation, personal pain, suffering, and embarrassment, deprivation of constitutionally-protected rights, termination of his contract with SCHOOL DISTRICT, impairment of and loss of contract rights; rights of free speech, right to assemble, and right to participate in Union activity; procedural due process; substantive due process; and equal protection of the laws;  lost wages; loss of valuable business opportunities; loss of prestige and good will in his teaching capacity; attorney's fees; expert witness fees; costs; and other compensatory and consequential damages.

110.    As the direct, proximate, intended, and foreseeable result of the Defendants' unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, malicious, and negligent actions made in bad faith of Defendant SCHOOL DISTRICT, as well as Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST and BARRETT-BAXTER individually and in their official capacities with the SCHOOL DISTRICT, Plaintiff has suffered, endured, and will continue to suffer and endure in the future, great pain and suffering of mind and body and has been otherwise injured and damnified as the result of the constitutional deprivations and other losses, harm, and damages Plaintiff has suffered and shall continue to suffer.

111.    Plaintiff stands entitled to judgment against Defendants, jointly and severally, to recover all available compensatory and consequential damages, plus appropriate awards for punitive damages, attorneys' fees, and all other available legal, equitable, and declaratory relief.

112.    But for the unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, malicious, and negligent course of conduct concerning termination of Plaintiff's employment taken by Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST, and BARRETT-BAXTER Plaintiff's contract of employment would not have been terminated; his contract of employment with the SCHOOL DISTRICT would have been continued; Plaintiff's employment with the SCHOOL DISTRICT would not have been terminated; and his reputation in the community and his professional reputation would not have been tarnished and damaged.

113.    Any conditions precedent to the commencement of this action arising under state laws, rules, or practices that may bar, limit, or inhibit the prosecution in state courts of actions arising under 42 U.S.C. § 1981 and/or 42 U.S.C. § 1983 and/or 42 U.S.C. § 1985 are preempted and nullified by the Supremacy Clause of the United States Constitution.

## COUNT I – 42 U.S.C. § 1983
## VIOLATION OF FIRST AMENDMENT FREEDOM OF SPEECH AND RIGHT TO ASSEMBLE

114.    Plaintiff re-alleges and re-incorporates all paragraphs above as though fully set forth herein.

115.    Defendants' unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, malicious, and negligent course of conduct concerning Plaintiff's employment was intended to deprive and did deprive Plaintiff of his constitutionally-guaranteed rights of freedom of speech, right to assemble, and right to participate in Union activity under both the United States Constitution; 42 U.S.C. § 1983; and the Florida Constitution.

116.    Plaintiff was subjected to deprivation of his constitutionally-protected rights and privileges of union membership and participation secured by the First Amendment to the United States Constitution.

117.    Under color of law, the SCHOOL DISTRICT deprived Plaintiff of his First Amendment rights when it terminated his employment based upon his Union membership and activities.

118.    Defendant SCHOOL DISTRICT's policymakers, *i.e.,* the Board members HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, Superintendent YOST, and BAXTER-BARRETT, acting individually and in their official capacities under color of law, made the decision to terminate Plaintiff's employment contract based upon the recommendations of principal BARRETT-BAXTER, whose motivations were malicious, biased, discriminatory based on Union activities, discriminatory based on race, and were taken in retaliation for Plaintiff's Union membership and activities.

119.    Furthermore, the SCHOOL DISTRICT permitted a pattern and practice of unlawful deprivation of Plaintiff's constitutionally-protected right to Union membership and participation by coming under additional intense, direct scrutiny by BARRETT-BAXTER when

she required additional scrutiny of Plaintiff's work when he called into question the advisability of calling Tuesday and Thursday collaborative meetings of all teachers in violation of 42 U.S.C. § 1983.

120.     Moreover, Defendants engaged in a custom or policy of discrimination and violation of Plaintiff's constitutionally-protected rights to engage in Union membership and activities by placing Plaintiff under additional intense, direct scrutiny by BARRETT-BAXTER due to his Union activities.

121.     The President of the St. Lucie Classroom Teachers Association/Classified Unit (CTA/CU), Vanessa Tillman, appeared at the Board meeting where the Board voted on Plaintiff's termination and requested that the Board "research the recommendation to terminate a probationary math teacher (contained in consent agenda item #11)". *See*, Exhibit B, E-Agenda, The School Board of St. Lucie County, Regular Meeting – October 8, 2013, p.3 and attachment, p. 3.  (The only probationary employee whose employment was terminated was Plaintiff.)

122.     Based upon Union president Tillman's representations, Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST, and BAXTER-BARRETT were aware that taking action to terminate Plaintiff's employment contract were unconstitutional, retaliatory, wrongful, tortious, biased, discriminatory, malicious and negligent.

123.     On Plaintiff's information and belief, Defendants failed and refused to research the termination of Plaintiff as requested by CTA/CU President Tillman, and merely rubber-stamped the recommendations of the Superintendent without further research, investigation, or hearing.

124.     The Defendants' custom or policy of discrimination is evident by BARRETT-BAXTER's additional scrutiny of Plaintiff's work and termination of his employment; by the Superintendent's rubber-stamping BARRETT-BAXTER's retaliatory conduct; and the Board's complete failure to investigate a Union request to research the termination of Plaintiff.

125.     Furthermore, the president of the St. Lucie Classroom Teachers Association/Classified Unit (CTA/CU), Vanessa Tillman, appeared at the Board meeting where the Board voted on Plaintiff's termination and requested that the Board "research the recommendation to terminate a probationary math teacher (contained in consent agenda item #11)". [The only probationary employee whose employment was terminated was Plaintiff.] *See*, Exhibit B, E-Agenda, The School Board of St. Lucie County, Regular Meeting – October 8, 2013, p.3 and attachment, p. 3.

126.     On Plaintiff's information and belief, Defendants failed and refused to research the termination of Plaintiff as requested by CTA/CU president Tillman, and merely rubber-stamped the recommendations of the Superintendent, made upon representations of BAXTER-BARRETT, without further investigation or hearing.

127.     The Consent Agenda (item #11) passed with favorable votes of all Board members at the meeting on October 8, 2013 without further discussion, review, questions,

research, or investigation.  [E-Agenda, The School Board of St. Lucie County, Regular Meeting – October 8, 2013, p.4-5].

128.    The Defendants' custom or policy of discrimination is evident by BARRETT-BAXTER's additional scrutiny of Plaintiff's work and termination of his employment; by the Superintendent's rubber-stamping BARRETT-BAXTER's retaliatory conduct; the Board Members' complete failure to investigate a Union request to research the termination of Plaintiff; and the Board Members rubber-stamping the decision of BARRETT-BAXTER upon the recommendation and rubber-stamp of Superintendent Genelle Z. Yost.

129.    As the direct, proximate, intended, and foreseeable result of the Defendants' unconstitutional, wrongful, tortious, negligent actions, malicious actions made in bad faith conduct, Plaintiff has suffered compensatory damages in the form of emotion mental anguish and emotional distress, humiliation, and punitive damages.

130.    Punitive damages are attributable to the Defendants because the decisions made by its high-level management and endorsed by the Board were vindictive and malicious which demonstrated bad faith on the part of Defendants.

131.    Punitive damages are attributable to all Defendants because of their rubber-stamping BARRETT-BAXTER's decision endorsed by Superintendent Yost, which was vindictive and malicious based upon Plaintiff's protected activities guaranteed by the First and Fourteenth Amendments.

132.    As a further direct result of Defendants' conduct, Plaintiff retained the undersigned law firm as his counsel to represent him in this action and is liable for attorney's fees to the undersigned law firm.

133.    As a direct, proximate, intended and foreseeable result of Defendants' unconstitutional, wrongful, tortious, and negligent actions taken under color of law, Plaintiff suffered substantial damages and, therefore, requests that he be awarded compensatory damages, emotional and mental anguish and emotional distress, humiliation; nominal damages, punitive damages, reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants as follows:  That Plaintiff be awarded compensatory damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages; and punitive damages; attorney's fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and such other relief as this Court deems just and proper.

## COUNT II – 42 U.S.C. § 1983
## DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS RIGHTS – VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS

134.    Plaintiff re-alleges and re-incorporates all preceding paragraphs above as though fully set forth herein.

135.    Plaintiff had a protected property interest in continued employment with the SCHOOL DISTRICT.

136.    Because of his protected property interest in employment, Plaintiff has a constitutionally-guaranteed right of notice and hearing before he could be terminated from employment.

137.    On the day BARRETT-BAXTER unlawfully terminated Plaintiff's employment with the SCHOOL DISTRICT, she had a Deputy Sheriff escort him from the building and did not provide any notice of right to hearing.

138.    The SCHOOL DISTRICT terminated Plaintiff's employment because of his participation and membership in the local Union without notice or hearing thereby depriving him of his right to due process afforded by the Fifth and Fourteenth Amendments to the United States Constitution.

139.    SCHOOL DISTRICT illegally terminated Plaintiff's employment based upon his First Amendment right to assemble and right to free speech.

140.    SCHOOL DISTRICT's defamatory publications in termination documents placed within Plaintiff's personnel file and the implicit stigma in his employment history that he was terminated for cause or that his employment with Defendant had been unsatisfactory or that he was not a good performer/teacher when his employment was terminated just days before his probationary employment was to become full-time, permanent employment and denied him protections afforded under the Fourteenth Amendment.

141.    Even though Plaintiff was loosely referred to as a "probationary" employee, he had a written contract of employment with SCHOOL DISTRICT and through the Employee Handbook was guaranteed so long as his probationary period was "successful".

142.    Moreover, BARRETT-BAXTER's contention that Plaintiff's employment was being terminated based on his poor teaching performance during the 2012-2013 school year was false, malicious and discredited by the PERC Hearing Officer as pretext for discrimination and retaliation against Plaintiff for his Union membership and participation, [*See gen.* PERC Hearing Officer's Recommended Order, p. 21, ¶ 2], because Plaintiff has never been written up, disciplined, or received negative performance evaluations.

143.    Because of the implication by termination prior to the conclusion of Plaintiff's probationary period implied that Plaintiff's performance was poor, and because of documents contained within Plaintiff's personnel file regarding his performance and termination, Plaintiff's reputation in the community and, more specifically, the educational community, was tarred and damaged, such defamatory publications denied him rights vouchsafed to him by the Fifth and Fourteenth Amendments to the United States Constitution and deprived him of his property and liberty interests in employment protected by the Due Process Clauses of each aforementioned Amendment.

144.    Defendants' unconstitutional, retaliatory, wrongful, tortious, and negligent course of conduct concerning Plaintiff deprived him of property and other protected rights without procedural due process of law in violation of Plaintiff's rights secured by the Fifth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983; and the Florida Constitution.

145.    Defendants' unconstitutional, wrongful, tortious, and negligent course of conduct concerning Plaintiff violated his rights to procedural due process and constituted unconstitutional action by Defendants acting under color of law by denying Plaintiff any pre-deprivation notice of the Defendants' course of conduct complained of herein or any pre-deprivation opportunity to be heard concerning Defendants' course of conduct complained of herein.

146.    As a direct, proximate, intended, and foreseeable result of Defendants' conduct, Plaintiff has suffered compensatory damages, emotional and mental anguish and distress, embarrassment, and humiliation.

147.    Plaintiff should be awarded punitive damages based on Defendants' vindictive, malicious, and willful acts sufficient to deter such actions in the future.

148.    Furthermore, Defendants' discriminatory, vindictive, and malicious actions through its employee BARRETT-BAXTER rubber-stamped by Defendants entitles Plaintiff to an award of punitive damages in a sum sufficient to deter Defendants from depriving Plaintiff of his constitutionally-guaranteed rights in the future and to deter against the continued circulation of defamatory statements about Plaintiff.

149.    As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm as his counsel and is liable for attorney's fees to the undersigned law firm.

150.    Plaintiff requests that he be awarded compensatory damages, damages for emotional and mental anguish and distress, embarrassment, and humiliation, punitive damages, reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants as follows:  That Plaintiff be awarded compensatory damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages; and punitive damages; attorney's fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and such other relief as this Court deems just and proper.

## COUNT III – CONSTITUTIONAL VIOLATIONS – 42 U.S.C. § 1983 SUBSTANTIVE DUE PROCESS VIOLATIONS

151.    Plaintiff re-alleges and re-incorporates all paragraphs above as though fully set forth herein.

152.    Defendants' unconstitutional, retaliatory, wrongful, tortious, and negligent course of conduct concerning Plaintiff's employment was intended to deprive and did deprive Plaintiff of his substantive due process of law in violation of Plaintiff's constitutionally-guaranteed rights secured by the Fifth and Fourteenth Amendments to the United Statutes Constitution; 42 U.S.C. § 1983; and the Florida Constitution.

153.    As the direct, proximate, intended, and foreseeable result of Defendants' unconstitutional, wrongful, tortious, and negligent actions taken under color of law, Plaintiff compensatory damages, emotional and mental anguish and distress, embarrassment, and humiliation.

154.    Plaintiff should be awarded punitive damages based on Defendants' vindictive, malicious, and willful acts sufficient to deter such actions in the future.

155.    As a further result of Defendants' conduct, Plaintiff has retained the undersigned law firm as his counsel and is liable for attorneys' fees to the undersigned law firm.

156.    Plaintiff requests that he be awarded compensatory damages, damages for emotional and mental anguish and distress, embarrassment, and humiliation, punitive damages, reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants as follows:  That Plaintiff be awarded compensatory damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages; and punitive damages; attorney's fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and such other relief as this Court deems just and proper.

## COUNT IV – CONSTITUTIONAL VIOLATIONS – 42 U.S.C. § 1983 and Florida Constitution, Art. I, § 2

## EQUAL PROTECTION VIOLATIONS

157.    Plaintiff re-alleges and re-incorporates all paragraphs above as though fully set forth herein.

158.    The Defendants' unconstitutional, retaliatory, wrongful, tortious, malicious, and negligent course of conduct concerning Plaintiff was intended to deprive and did deprive Plaintiff of rights secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983, and the Florida Constitution, art. I, § 2.

159.    As the direct, proximate, intended, and foreseeable result of Defendant's unconstitutional, wrongful, tortious, and negligent actions taken under color of law, Plaintiff suffered substantial damages emotional and mental anguish and distress, embarrassment, and humiliation.

160.    Furthermore, Defendants' vindictive and malicious actions through its employee BARRETT-BAXTER rubber-stamped by Defendants entitles Plaintiff to an award of punitive damages in a sum sufficient to deter Defendants from depriving Plaintiff of his constitutionally-guaranteed rights in the future and to deter against the continued circulation of defamatory statements about Plaintiff.

161.    Plaintiff should be awarded punitive damages based on Defendants' discriminatory, vindictive, malicious, and willful acts sufficient to deter such actions in the future.

162.    As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm as his counsel and is liable for attorney's fees to the undersigned law firm.

163.    Plaintiff requests that he be awarded compensatory damages, damages for emotional and mental anguish and distress, embarrassment, and humiliation, punitive damages, reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants as follows:  That Plaintiff be awarded compensatory damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages; and punitive damages; attorney's fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and such other relief as this Court deems just and proper.

## COUNT V – CONSTITUTIONAL VIOLATIONS – 42 U.S.C. § 1981
## INTERFERENCE WITH CONTRACT

164.    Plaintiff re-alleges and re-incorporates all paragraphs above as though fully set forth herein.

165.    Defendants were aware that Plaintiff's probationary contract of employment would vest into a permanent contract of employment within days of the actions undertaken by Defendants individually and under color of law.

166.    The SCHOOL DISTRICT's principal BARRETT-BAXTER was fully aware that Plaintiff's probationary contract would revert to a permanent contract within days when she decided to terminate his contract based upon his participation in Union activities and her racial animus toward Plaintiff.

167.    Defendants voted on October 8, 2013 to terminate Plaintiff's contract with the SCHOOL DISTRICT.

168.    Furthermore, BARRETT-BAXTER was motivated by racial animus toward Plaintiff in interfering with Plaintiff's contract with the SCHOOL DISTRICT.

169.    Defendant YOST rubber-stamped BARRETT-BAXTER'S decision to terminate Plaintiff's contract, and YOST supported and recommended that decision to the entire School

Board consisting of Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, and YOST, who served as conduits of the subordinate's improper motive thus rubber-stamping the recommendation of the subordinate.

170.    Defendants knowingly, wrongfully, with the purpose of interfering with, impairing, obstructing, frustrating, and wrongfully terminating Plaintiff's contract rights did wrongfully, unlawfully, and improperly interfere with Plaintiff's contract of employment.

171.    Furthermore, Defendants knew that terminating Plaintiff's contract of employment while he was in probationary status would put a blight, tarnish, and blemish on Plaintiff's teaching career and that such blight, tarnish, and blemish would prohibit his obtaining further teaching opportunities and would effectively end his teaching career.

172.    The interference with Plaintiff's contract was unlawful, unauthorized, and in violation of Plaintiff's constitutional right to contract and had no legitimate justification and, as such and as a matter of law, establishes legal malice on the part of Defendants.  Fla. Const., art. I, § 10.

173.    But for Defendants' knowing and wrongful purpose of interfering with, impairing, obstructing, frustrating, and wrongfully terminating Plaintiff's contract by wrongfully, unlawfully, and improperly interference with the administration and termination of Plaintiff's contract, Plaintiff would not have been terminated or required to hire counsel to assert his rights; Plaintiff would have been hired permanently by SCHOOL DISTRICT, and Plaintiff would not have suffered the damages caused by termination of his contract and would not have suffered harm and damages as the result of intentional, wrongful, and tortious actions of Defendants.

174.    As the direct, proximate, intended, and foreseeable result of Defendants' interference with Plaintiff's contract, Plaintiff suffered substantial compensatory damages, emotional and mental anguish and distress, embarrassment, and humiliation.

175.    Furthermore, Defendants' vindictive and malicious actions through its employee BARRETT-BAXTER rubber-stamped by Defendants entitles Plaintiff to an award of punitive damages in a sum sufficient to deter Defendants from depriving Plaintiff of his constitutionally-guaranteed rights in the future and to deter against the continued circulation of defamatory statements about Plaintiff.

176.    Plaintiff should be awarded punitive damages based on Defendants' vindictive, malicious, and willful acts sufficient to deter such actions in the future.

177.    As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm as his counsel and is liable for attorney's fees to the undersigned law firm.

178.    Plaintiff requests that he be awarded compensatory damages, damages for emotional and mental anguish and distress, embarrassment, and humiliation, punitive damages, reasonable attorney's fees and costs of suit pursuant to Defendants' tortious interference with Plaintiff's contract.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants as follows:  That Plaintiff be awarded compensatory damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages; and punitive damages; attorney's fees, and costs; and such other relief as this Court deems just and proper.

## COUNT VI – CONSPIRACY TO DEPRIVE OF EQUAL PROTECTION OF THE LAWS
## 42 U.S.C. § 1985

179.    Plaintiff re-alleges and re-incorporates all paragraphs above as though fully set forth herein.

180.    BARRETT-BAXTER, who is African-American and who made the decision to terminate Plaintiff's employment, experienced and expressed racial animus toward Plaintiff, who is Caucasian.

181.    Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, and YOST knew of and were aware of BAXTER-BARRETT's racial animus toward Plaintiff.

182.    Furthermore, Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, and YOST were aware of and incorporated and adopted as their own beliefs BAXTER-BARRETT's racial animus toward Plaintiff.

183.    Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, and YOST were made aware of improper, biased, racially motivated and bad faith motives to terminate Plaintiff's contract when Union president Vanessa Tillman requested research and investigation into the termination of Plaintiff's contract with the SCHOOL DISTRICT.

184.    Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, and YOST were further made aware of the improper, biased, racially motivated and bad faith motives of BARRETT-BAXTER to terminate Plaintiff's contract with the SCHOOL DISTRICT and did conspire to do so.

185.    Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, and YOST, in conjunction with BARRETT-BAXTER, acted in furtherance of that conspiracy by voting on October 8, 2013 to terminate Plaintiff's contract.

186.    Because of Defendants' HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, YOST, and BARRETT-BAXTER's conspiracy to act and their act taken in furtherance of the conspiracy, Plaintiff's contract of employment with the SCHOOL DISTRICT was terminated thereby depriving Plaintiff of his property right in employment and right or privilege as a citizen of the United States.

187.    Plaintiff should be awarded punitive damages based on Defendants' discriminatory, vindictive, malicious, and willful acts sufficient to deter such actions in the future.

188.    As a further result of Defendants' conduct, Plaintiff has retained the undersigned law firm as his counsel and is liable for attorney's fees to the undersigned law firm.

189.    Plaintiff requests that he be awarded compensatory damages, damages for emotional and mental anguish and distress, embarrassment, and humiliation, punitive damages, reasonable attorney's fees and costs of suit pursuant to Defendants' tortious interference with Plaintiff's contract.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants as follows:  That Plaintiff be awarded compensatory damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages; and punitive damages; attorney's fees, and costs; and such other relief as this Court deems just and proper.

## COUNT VII - TORTIOUS INTERFERENCE WITH CONTRACT

190.    Plaintiff re-alleges and re-incorporates all paragraphs above as though fully set forth herein.

191.    Defendants were fully cognizant of Defendant SCHOOL DISTRICT's contract of employment with Plaintiff and knew the contract was a legally binding contract between SCHOOL DISTRICT and Plaintiff.

192.    Defendants were aware that Plaintiff's probationary contract of employment would vest into a permanent contract of employment within days of the actions Defendants took under color of law.

193.    The SCHOOL DISTRICT's principal. BAXTER-BARRETT, was fully aware that Plaintiff's probationary contract would revert to a permanent contract within days when she decided to terminate his contract; and such was known or made known to the SCHOOL DISTRICT Board members who were to vote on Plaintiff's termination of employment.

194.    Defendants HAWLEY, MILLS, HENSLEY, HILSON, INGERSOLL, and YOST voted on October 8, 2013 to terminate Plaintiff's contract with the SCHOOL DISTRICT based upon his participation in Union activities and racial animus.

195.    Defendants knowingly, wrongfully, with the purpose of interfering with, impairing, obstructing, frustrating, and wrongfully terminating Plaintiff's contract rights did wrongfully, unlawfully, and improperly interfere with Plaintiff's contract of employment.

196.    Furthermore, Defendants knew that terminating Plaintiff's contract of employment while he was in probationary status would put a blight, tarnish, and blemish on

Plaintiff's teaching career and that such blight, tarnish, and blemish would prohibit his obtaining further teaching opportunities and would effectively end his teaching career.

197.    The interference with Plaintiff's contract was unlawful, unauthorized, and in violation of Plaintiff's constitutional right to contract and had no legitimate justification and, as such and as a matter of law, establishes legal malice on the part of Defendants.  Fla. Const., art. I, § 10.

198.    But for Defendants' knowing and wrongful purpose of interfering with, impairing, obstructing, frustrating, and wrongfully terminating Plaintiff's contract by wrongfully, unlawfully, and improperly interference with the administration and termination of Plaintiff's contract, Plaintiff would not have been terminated or required to hire counsel to assert his rights; Plaintiff would have been hired permanently by SCHOOL DISTRICT, and Plaintiff would not have suffered the damages caused by termination of his contract and would not have suffered harm and damages as the result of intentional, wrongful, and tortious actions of Defendants.

199.    As the direct, proximate, intended, and foreseeable result of Defendants' interference with Plaintiff's contract, Plaintiff suffered substantial compensatory damages, emotional and mental anguish and distress, embarrassment, and humiliation.

200.    Furthermore, Defendants' vindictive and malicious actions through its employee BARRETT-BAXTER rubber-stamped by Defendants entitles Plaintiff to an award of punitive damages in a sum sufficient to deter Defendants from depriving Plaintiff of his constitutionally-guaranteed rights in the future and to deter against the continued circulation of defamatory statements about Plaintiff.

201.    Plaintiff should be awarded punitive damages based on Defendants' discriminatory, vindictive, malicious, and willful acts sufficient to deter such actions in the future.

202.    As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm as his counsel and is liable for attorney's fees to the undersigned law firm.

203.    Plaintiff requests that he be awarded compensatory damages, damages for emotional and mental anguish and distress, embarrassment, and humiliation, punitive damages, reasonable attorney's fees and costs of suit pursuant to Defendants' tortious interference with Plaintiff's contract.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants as follows:  That Plaintiff be awarded compensatory damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages; and punitive damages; attorney's fees, and costs; and such other relief as this Court deems just and proper.

## COUNT VIII – DECLARATORY RELIEF
## INVALIDATION OF TERMINATION OF PLAINTIFF'S CONTRACT

204.    Plaintiff stands entitled to a declaratory judgment that declares the termination of Plaintiff's contract null and void because Defendants caused such contract termination as an unconstitutional penalty in violation of Plaintiff's rights arising under and protected by the First, Fifth, and Fourteenth Amendments to the United States Constitution; Fla. Const. art. I, §§ 2, 6, and 9.

## COUNT IX – BREACH OF CONTRACT

205.    Plaintiff re-alleges and re-incorporates all paragraphs above as though fully set forth herein.

206.    Plaintiff entered into a valid probationary contract with Defendant SCHOOL DISTRICT for the school year 2012-2013.

207.    In May of 2013, Defendant BARRETT-BAXTER recommended Plaintiff's re-appointment for the school year 2013-2014; the School Board voted unanimously on the re-appointment on June 25, 2013.  Plaintiff did not receive a copy of the new contract entered into under the re-appointment; nevertheless, he began his employment under the re-appointment in August of 2013.

208.    On September 20, 2015, for illegal reasons motivated by malice and in violation of Plaintiff's constitutional rights, the SCHOOL DISTRICT through BARRETT-BAXTER abruptly terminated Plaintiff's contract of employment; such actions constituted a material breach of Plaintiff's contract.

209.    Plaintiff suffered damages as a result of Defendant's breach and as a result, Defendant SCHOOL DISTRICT is indebted to this Plaintiff.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants as follows:  That Plaintiff be awarded compensatory damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages; and punitive damages; attorney's fees, and costs; and such other relief as this Court deems just and proper.

210.    Plaintiff hereby re-alleges and re-incorporates all allegations set forth in other paragraphs of this Complaint as though fully set forth herein.

WHEREFORE, Plaintiff prays for the relief hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RONALD MURDOCH, prays that this honorable Court grant the following relief:

1.     A finding that the Defendants stand jointly and severally liable as to Plaintiff for violations of 41 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; and Fla. Const. art. I, §§ 2, 6, and 9.

2.     A finding that Defendants stand jointly and severally liable to Plaintiff on his Count for tortious interference with Plaintiff's contract rights.

3.     A declaratory judgment declaring null and void the termination of Plaintiff's contract with the School District because Defendants caused such contract termination as an unconstitutional penalty in violation of Plaintiff's rights arising under and protected by the First, Fifth, and Fourteenth Amendments to the United States Constitution.

4.     An appropriate award of damages in the form of reinstatement, or alternatively, front pay, emotional and mental anguish and distress, humiliation; nominal damages to compensate Plaintiff for the damages incurred as a result of the Defendants' unconstitutional, retaliatory, wrongful, tortious, negligent, malicious conduct made in bad faith toward Plaintiff as complained of herein.

5.     An award of punitive damages in an amount sufficient to punish Defendants for their unconstitutional, retaliatory, wrongful, tortious, negligent, malicious conduct made in bad faith toward Plaintiff as complained of herein to deter such outrageous conduct in the community in the future.

6.     An award of damages for material breach of contract.

7.     Award Plaintiff attorney's fees and costs pursuant to 42 U.S.C. § 1988 and all applicable statutes providing for an award of attorney's fees.

8.     An award of prejudgment interest on all damages awarded in this action.

9.     An appropriate award to Plaintiff of his reasonable attorney's fees, reasonable costs of this action, and interest.

10.    Such other and further relief, including injunctive and declaratory relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Trial by jury on all issues so triable is hereby demanded.

Respectfully submitted,

Plaintiff, RONALD MURDOCH, By His Attorney:
LAW OFFICE OF REBECCA DIXON, PLLC

By:    */s/ Rebecca L. Dixon* _____
          Rebecca L. Dixon, Esquire
          Florida Bar No.:  84126
          16877 E. Colonial Drive, #337
          Orlando, FL  32820
          Telephone:  (407) 994-9140
          Facsimile:  (321) 804-4462
          E-Mail:      rebeccadixonlaw@gmail.com
          Attorney for Plaintiff, Ronald Murdoch

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will provide electronic copies to Anthony Gonzales, Esquire, agonzales@carmanbeauchamp.com and rhian@carmanbeauchamp.com, 1191 E. Newport Center Dr., Suite 107, Deerfield Beach, FL 33442 this 13th day of November, 2015.

          */s/ Rebecca L. Dixon*_____
          Rebecca L. Dixon, Esquire
          Florida Bar No.:  84126